1  S. Clinton Woods (SBN 246054)
2  Michael McShane (SBN 127944)
   AUDET & PARTNERS, LLP
3  711 Van Ness Avenue, Suite 500
   San Francisco, CA 94102
4  Telephone: (415) 568-2555
5  Facsimile: (415) 568-2556
   cwoods@audetlaw.com
6  mmcshane@audetlaw.com
7
8  *Attorneys for Plaintiff SARA HAWES,*
   *an individual, and on behalf of all others similarly situated*
9

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  SARA HAWES individually, and on        Case No.:
    behalf of all others similarly situated,
14                                          CLASS ACTION COMPLAINT
15                  Plaintiff,
                                            JURY TRIAL DEMANDED
16          v.

17
18  MACY'S RETAIL HOLDINGS, INC.,
    AQ TEXTILES LLC, CREATIVE
19  TEXTILE MILLS PRIVATE LIMITED

20              Defendants.
21

22
23
24
25
26
27
28

                              COMPLAINT

Plaintiff Sara Hawes ("Plaintiff") brings this action on her own behalf and on behalf of a putative class (the "Class") consisting of Plaintiff and all others similarly situated, pursuant to the laws of California, against Macy's Retail Holdings, Inc. ("Macy's"), AQ Textiles LLC ("AQ Textiles"), Creative Textile Mills Pvt. Ltd. ("Creative Textiles"), the "Defendants", and allege the following based on information and belief, except for those paragraphs pertaining to Plaintiff's own actions, which are alleged based on personal knowledge.

## **INTRODUCTION**

1.    Plaintiff brings this action on both her own behalf and on behalf of a Class consisting of Plaintiff and all others similarly situated to redress Defendants' deceptive acts and unconscionable business practices designed to deceive and mislead consumers the public into believing that Defendants' bedding and linen products had higher thread counts than they really have and as such were of better qualify, softer and more comfortable for sleeping than products with lesser thread counts.   In purchasing bedding and linen products, Plaintiff and the Class received less than what was promised by Defendants due to the improperly inflated thread counts represented on bedding and linen labels sold by Defendants.

2.    Members of the bedding and linen products industry including the Defendants consistently communicates to consumers that higher thread count sheets are of better quality, softer, and more comfortable for sleeping.  As a result, consumers purchasing bedding and linen products use thread count as a primary indicator of the quality of the sheets offered for sale, and pay higher prices for higher thread count bedsheets and linens.

3.    As part of a scheme to make their bedding and linen products more attractive, boost sales, and increase profits, Defendants departed from well-established and long-standing industry standards governing the calculation and advertisement of thread counts  and inflated the thread counts on the labels of the  products it marketed, distributed and/or sold.

1        4.    Defendants misrepresented, and continue to misrepresent, the thread count

2    in many of the bedding and linen products they advertise, market distribute throughout

3    the country, resulting in the sale of bedding and linen products represented to have

4    greater than their true thread counts to consumers throughout the United States.   The

5    representation of the false and misleading thread count also deceives and misleads

6    consumers into believing that they are purchasing a product which is of higher quality,

7    softness and better for sleeping than products with a lower thread count.

8        5.    Defendants knowingly departed from following well accepted and known

9    industry standards for calculating thread counts, and thereby inflated thread counts to

10   market, advertise, package, and sell their bedding and linen products.

11       6.    Inaccurate thread counts create reasonable but mistaken beliefs by

12   consumers about the quality of bedding and linen products.  For example, reasonable

13   consumers believe that a bedding package label stating that it contains 900 thread-

14   count bedding actually contains bedding with a thread count calculated at 900

15   according to an honest and consistent industry standard.  Likewise, consumers believe

16   that a 900 thread- count bedding is going to be of higher quality, softer and better for

17   sleep than a lower thread-count bedding.   Consumers rely on Defendants'

18   representations and advertising as they compare and assess products and make

19   purchase decisions.

20       7.    As a direct result of Defendants' improper, deceptive, and unconscionable

21   scheme to misrepresent bedding and line thread counts, Plaintiff and other Class

22   members suffered damages  because the inflated thread counts put forth by Defendants

23   in their products induced Plaintiff and other members of the Class to purchase their

24   products when Plaintiff and other members of the Class would not have purchased

25   them, or would only have paid a lower price for the product if they had known the

26   actual thread counts at the time of purchase .

27   **JURISDICTION AND VENUE**

28       8.    This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because (1) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendants conduct business in this District, and have intentionally availed themselves of the laws and markets of this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.   Additionally, Plaintiff is a resident of this District.

10.    Defendant Macy's' improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part. Defendants' decisions to engage in the improper conduct set forth herein were made in this District.   Some of the bedding and linen products at issue were advertised, marketed, sold and/or distributed by Macy's, or its operating entities, in this district. Macy's or its operating entities directly advertised, marketed and sold bedding and linen products to consumers in this district.

11.    The harm alleged herein occurred in this District, or emanated from Defendants' improper conduct that occurred in this District, in whole or in part.

## PARTIES

12.    Plaintiff Sara Hawes is an adult citizen of California.   Ms. Hawes purchased a Somerset Collection brand queen-size sheet set, manufactured by Defendant Creative Textiles and represented to be "900 Thread Count" from Defendant Macy's' retail store located at 8500 Beverly Blvd. in Los Angeles, CA. *See* Ex. A, Label on sheets purchased by Plaintiff.  Plaintiff relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with a 900 thread count and that the sheets were of higher quality, softer and better for sleep than sheets with lower thread counts Plaintiff paid

$76.11 ($69.99 plus tax) for this sheet set.

13.    Defendant Macy's Retail Holdings, Inc., is a New York corporation, with its principal executive offices located at 7 West 7th Street, Cincinnati, Ohio 45202. Prior to June 1, 2007, Macy's Inc. was known as Federated Department Stores, Inc. As of June 2, 2017, Macy's was operating 840 stores in 45 states, the District of Columbia, Guam and Puerto Rico under the names of Macy's, Macy's Backstage, Macy's China Limited, Bloomingdale's, Bloomingdale's The Outlet, and bluemercury stores, as well as the online retail sites macys.com, bloomingdales.com, and bluemercury.com.    In California, Macy's operated 145 stores consisting of 11 Bloomingdale's, 1 Bloomingdale's Outlet, 1 bluemercury, and 132 Macy's stores.    In Macy's Annual Report for the fiscal year ending January 28, 2017, Macy's reported net sales of $25,778,000,000 of which 16% ($4,124,480,000) was identified as Home/Miscellaneous sales, which presumably includes sales of bedding and linen products.[1]

14.    Defendant Macy's has sold and/or sells bedding and linen products bearing at least the following brand names:

| | | |
|---|---|---|
| AQ Textiles | Bar III | BCBGeneration |
| Betsey Johnson | Bluebellgray | Brookstone |
| Calvin Klein | Carter's | Charter Club |
| Donna Karan | Echo | Elite Home |
| Fairfield Square Collection | Hotel Collection | Hugo Boss |
| Jay Franco | Jessica Sanders | JLA Home |
| Joy Mangano | Lacoste Home | Martex |
| Martha Stewart Collection | Nautica | NoJo |
| Pendleton | Ralph Lauren | Shavel |
| Sunham | Tommy Bahama Home | Tommy Hilfiger |
| Trina Turk | Waterford | Westpoint |
| | | Westpoint |

*See* www.macys.com.

---

[1]  The other categories are Women's Accessories, Intimate Apparel, Shoes and Cosmetics and Fragrances; Woman's Apparel; and Men's and Children's.

4

COMPLAINT

15.     Defendant Creative Textiles is a private limited company organized under the laws of the Republic of India, with its primary place of business at 211 Cama Industrial Estate, Sun Mill Compound Mumbai, Maharashtra 400013 India.

16.     Defendant AQ Textiles is a North Carolina LLC with it principal place of business and registered offices located at 214 Staunton Drive, Greensboro, North Carolina 27410.

17.     Defendant Creative Textiles manufactures and sells textiles, including the relevant sheets and bedding products, throughout the United States, through its subsidiary AQ Textiles.

18.     Defendant AQ Textiles, on behalf of Creative Textiles, imports and distributes certain of the relevant sheet and bedding products to Defendant Macy's.

## FACTUAL ALLEGATIONS

19.     For consumers purchasing bedding and linens, thread count is used as an indicator of fabric quality and a basis on which they make purchasing decisions.  As the thread count increases, so does the price that consumers are willing to pay for bedding and linens.

20.     The industry including the Defendants know that consumers will pay a higher price for linens and bedding products with a higher thread count and as such increase the price as the thread count on the products increase.

21.     Consumers rely on represented thread count as the gauge for the quality of their bedding and linen products.  *See* ABC News, <u>Are Shoppers Short-Sheeted by Thread Count</u>?, November 14, 2016, *available at http://abcnews.go.com/GMA/ story?id=125380&page=1* ("Consumers who enjoy slipping under top-quality bed sheets rely on thread count as a gauge while shopping….").

22.     Consumers pay more for a higher thread count sheets.  *Id.* ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheets that [tested as] only a 300-count is $180 a set.").

23.     An informal survey of the prices of cotton, king-size bedding sets at

online retailers in December 2016 showed that as thread count increased, so did the
price for the bedding.



24.    The common or standard practice in the U.S. bedding and linen industry
has been to count the number of threads in both the warp (vertical direction) and filling
(horizontal direction).  Common or standard practice counts each yarn as one thread,
regardless of whether the yarn was a single-ply or multi-ply yarn.

25.    The American Society for Testing and Materials' ("ASTM") Standard
Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric,
Designation: D3775-12, covers the standard test method for measuring warp end count
and filling pick count and is applicable to all types of woven fabric.  Section 9.1.1 of
D3775-12 instructs on the appropriate method for determining thread count: "Count
individual warp ends and filling picks as single units regardless of whether they are
comprised of single or plied components."

26.    The terms relevant to ASTM D3775-12, and related to textiles, are defined by ASTM Designation: D123-03.  *See* Section 3, Terminology of ASTM D3775-123.  These terms, among others, include:

    **a.**    **count,** *n − in woven textiles*, the number of warp yarns (ends) and filling yarns (picks) per unit distance as counted while the fabric is held under zero tension, and is free of folds and wrinkles.

    **b.**    **end,** *n − in fabric*, an individual warp yarn (single or ply) or cord.

    **c.**    **filling,** *n −* yarn running from selvage to selvage at right angles to the warp in a woven fabric.

    **d.**    **pick,** *n −* an individual filling yarn.

    **e.**    **pick count,** *n − in woven fabrics*, the number of filling yarns per unit fabric length.

*See* ASTM D 123-03, Standard Terminology Relating to Textiles.

27.    The prior versions of ASTM D3775, going back at least to 2003, included the same instructions for proper counting under the standard.  ASTM, Standard Test Method for Warp End Count and Filling Pick Count of Woven Fabric, Designation: D3775-03a, Section 9.1.4 instructs, "Count individual warp yarns (ends) and filling yarns (picks) as single units regardless of whether they are comprised of single or plied components."

28.    Per ASTM D3775-12 § 9.1.4, the standard deviation of the samples tested, should be 5% or less.  In other words, the stated thread count should be within 5% of the actual thread count.

29.    However, some bedding and linen manufacturers and retailers, such as Defendants, are not adhering to the standard-based, traditional, and common industry practice.  These manufacturers and retailers double or triple the true thread count by counting plied yarns individually.

30.    According to the National Textiles Association ("NTA") and the Federal Trade Commission ("FTC"), this practice of determining thread count by counting

plied yarns individually "inflates the thread count numbers to levels which double or triple (or more) the thread count as determined by the long standing, traditional way. This practice has also created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways." *See* FTC Letter to National Textile Association, August 2, 2005, Ex. B.

31.    In its Letter to the National Textile Association, the FTC stated that:

> [C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn.  A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: '300 thread count, 2 ply yarn.'  A representation of '600 thread count' for this same product would likely mislead consumers about the quality of the product being purchased."

32.    The practice of counting the plies that make up each thread was also condemned by the American Textile Manufacturer's Institute ("ATMI").  In a letter sent to the FTC on January 31, 2002, Ex. C, ATMI addressed marketing of bed sheets and pillowcases to consumers with claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.

> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric.  A plied yarn is one in which two or more yarns are twisted together to form a single strand.

> ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and

1    misleading information.

2    ASTM method D 3775-96 (Standard Test Method for Fabric
3    Count of Woven Fabric) [a prior version of D3775-12] the
     long-accepted industry standard for determining count. This
4    method has been in use in this country for many years and
5    serves as the industry's standard way to report the count of
     many woven textile fabrics, including sheeting. It is based
6    on the number of yarns in the warp direction and filling
7    direction, regardless of ply, and has become an important
     parameter used by consumers to judge the quality of sheeting
8    products, since the higher the count, the more luxurious the
9    product.

10   ATMI believes that any information provided to the
11   consumer should be true and correct so as not to be deceptive
     or misleading. We believe that plied yarns are properly
12   counted as only one yarn. For example, a fabric containing
13   250 individual four ply yarns in a square inch would be
14   described as a "250 thread count fabric, even though each
     thread or yarn contained four plies twisted together." It
15   would be false and misleading to describe this as a 1000
16   thread count product.

17       33.   The FTC's reply letter to ATMI dated March 18, 2002, advised how the

18   Commission's staff would analyze claims that counting yarns within a ply as

19   individual yarns to determine thread count was a deceptive practice. *See* Ex. C. The

20   FTC advised that where ASTM standards existed, the Commission would give great

21   weight to the applicable standards to determine if product claims were reasonable or

22   deceptive:

23       A thread count claim, like other objective, material claims
         about a product, must be supported by a "reasonable basis."
24       In determining what constitutes a reasonable basis for claims,
25       we would consider what experts in the field believe is
         appropriate, including whether there are relevant consensus
26       based test procedures, such as an ASTM test procedure, or
27       other widely accepted industry practices that apply to the
         matter. If so, we would give such procedure or practices
28       great weight in determining whether the advertiser has met

                                    9

its substantiation burden.  In other related context, the Commission has encouraged the use of ASTM tests.  *See* Press Release, FTC Announces Actions on Wool Labeling Rules, dated March 8, 1994 (copy attached) ("In its clarification of the procedure used for testing the fiber content of wool products, the FTC said the industry members should, where possible, use procedures established by the American Society for Testing and Materials (ASTM).").

34.    Despite these long-standing industry standards for calculating thread counts, and the likelihood that deviating from the standards would mislead and deceive consumers, Defendants manufactured, marketed, advertised, sold and/or distributed bedding and linen products with inflated thread counts.

35.    Defendant Macy's represented that numerous bedding and linen products were of a certain thread count, but when measured in accordance with industry standards, these thread counts were far less than claimed because Defendant improperly counted the plies making up the threads in their linens rather than the threads themselves.

36.    Plaintiff Hawes purchased a Somerset Collection brand sheet set, imported by Defendant AQ Textiles and manufactured by Defendant Creative Textiles, which was represented to be "900 Thread Count", from Defendant Macy's' retail store located at 8500 Beverly Blvd. in Los Angeles, CA.  However, the true thread count of those sheets was 249.

37.    Other sheets and bedding products, besides those purchased by Plaintiff, are advertised and packaged with false thread counts.

38.    For example, the Ultra Lux 800 sheets sold by TJ Maxx, and manufactured and imported, respectively, by Defendants Creative Textiles and AQ Textiles, were represented to be 800 Thread Count.  However, when measured in accordance with industry standards, these sheets actually had a 230 Thread Count.

39.    Similarly, the Sterling Manor 700 sheets sold by TJ Maxx, and manufactured and imported, respectively, by Defendants Creative Textiles and AQ

10

COMPLAINT

Textiles, were represented to be 700 Thread Count.  However, when measured in accordance with industry standards, these sheets actually had a 245 Thread Count.

40.    On information and belief, numerous other brands and marks sold by Defendants and other retailers are marketed with false thread counts.

41.    Defendants made false representations as to the thread count of their sheets and bedding products on the website Macy's.com, as well as in all the retail Macy's stores stocked with the relevant goods.

42.    Defendants' representations regarding the thread counts of their bedding and linen products were deceptive and misleading according to both the industry standard and the FTC's guidelines for accurately describing thread counts.

43.    By improperly inflating thread counts contrary to industry standards, Defendants have engaged in, and continue to engage in, practices which are unconscionable, deceptive, and fraudulent, and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in their manufacturing, advertising, marketing, selling, and distribution of bedding and linen products.

44.    As a direct and proximate result of Defendants' improper conduct, Plaintiff and Class Members paid more for bedding and linen products which Defendants represented had inflated thread counts.

45.    By representing that their products had higher thread counts than they actually had, Defendants unjustly profited from the sale of such bedding and linen products to consumers.

46.    The inflated thread counts put forth by Defendants in their products induced Plaintiff and other members of the Class to purchase their products when Plaintiff and other members of the Class would not have purchased them, or would only have paid a lower price for the product if they had known the actual thread counts at the time of purchase.

## CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks to represent a Class comprised of:

> **California Class:**
>
> All persons in the State of California that purchased bedding or linen from Defendants for personal, family, or household purposes that Defendants represented as having thread counts higher than the bedding or linen's actual thread counts.

48.    The class period commences on the first date that Defendants manufactured, marketed, advertised, sold and/or distributed the offending bedding and linen products and ending on the date that the Court certifies this suit as a class action.

49.    Excluded from the Class (and in the alternative, the Subclasses defined below) are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants.

50.    The Class is so numerous that joinder of all members is impracticable. The disposition of these claims in a class action will provide benefits to the parties, Class members, and the Court.

51.    Although the Class members' identities and numbers are presently unknown, Defendants' records can readily determine this information using objective criteria.  The Class likely consists of thousands of purchasers throughout the United States.

52.    Defendants' policy and practice of inflating thread counts and misrepresenting thread counts to consumers has subjected and affected all members of the Class.  As such, there are many common questions of law and fact among Plaintiff and the members of the Class, which predominate over questions affecting individual Class members.  Common questions include, but are not limited to, the following:

a.   Whether ASTM D3775 Standard Test Method for Warp (End) and Filling (Pick) Count of Woven Fabrics was the generally accepted method in the textile industry for calculating thread count during the relevant time period.

b.   Whether Defendants knew or should have known that ASTM D3775 was the generally accepted method in the textile industry for calculating thread count during the relevant time period.

c.   Whether Defendants misrepresented thread counts on their bedding and linen products contrary to industry standards, by counting plies instead of actual threads in contravention of ASTM D3775;

d.   Whether Defendants manufactured, advertised, sold, or delivered for sale bedding and linen products that were advertised or represented to be of a certain thread count, but were, in fact, of a lesser thread count;

e.   Whether Defendants knew or should have known persons would rely on the inflated thread counts in making their purchase decision;

f.   Whether Defendants' inflated thread counts violated the laws of the State of California and/or other States;

g.   Whether Defendants are liable for violation of the laws of the State of California and/or other States;

h.   Whether Defendants' misrepresentations caused damages to members of the Class and the extent of those damages;

i.   Whether Defendants were unjustly enriched, and, if so, the extent to which they were unjustly enriched; and

j.   Whether Defendants should be enjoined from future conduct of the type complained of herein.

53.   Plaintiff's claims are representative of the putative Class because her claims are typical of the claims of the Class members, and rely on Defendants'

13

misrepresentations and application of an industry standard. If brought and prosecuted individually, the claims of each putative Class member would require proof of the same materials and substantive facts, rely on the same remedial theories, and seek the same relief.

54.    Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class and complex litigation as counsel.

55.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action will permit an orderly and expeditious administration of the claims of the Class, will foster economies of time, effort, and expense, and will insure uniformity of decisions. The prosecution of individual actions by Class members would create the risk of (a) inconsistent or varying adjudications with respect to individual Class members; and (b) be grossly impracticable because the cost of vindicating an individual Class member's claim would likely exceed the value of the claim.

56.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

57.    Due to the relatively small amounts of damage to each member of the Class, a class action is superior to other available methods for the fair and efficient adjudication of the controversy which is subject of this action.

58.    The interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and there is no known difficulty that would be encountered in the management of this Class.

## EQUITABLE TOLLING

59.    Despite knowing that their bedding and linen products were defective because they did not contain the qualities Defendants advertised, Defendants concealed its defective nature from Plaintiff and the Class by affirmatively marketing and advertising its products as having certain qualities that they did not have.

60.    Plaintiff and Class members did not and could not have known that their bedding and linen did not have the qualities that it was advertised to have, as this fact was not disclosed to them and was not apparent from a superficial inspection the products.

61.    Plaintiff and Class members could not have discovered the defective nature of Defendants' products through the exercise of due diligence.

62.    Due to Defendants' fraudulent concealment of the defects associated with their products, Defendants are estopped from asserting statute of limitations defenses to any of the claims alleged herein.

**Count One**

**Magnusson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.***

63.    Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

64.    Plaintiff brings this Count on behalf of herself and the Class.

65.    This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

66.    Defendants are "supplier" and "warrantors" within the meaning of 15 U.S.C. § 2301(4) and (5) and/or (7) because they regularly sell sheets and bedding products with a written and/or implied warranty guaranteeing that their products have a certain thread count and a certain corresponding quality.

67.    Plaintiff and other Class Members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased sheets and bedding products for personal, family, or household purposes.

68.    The sheets and bedding products are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

69.    The Act provides a cause of action for any consumer who suffers damages because of the failure of a warrantor to comply with a written or implied warranty. 15

15

COMPLAINT

U.S.C. § 2310(d)(1).

70.    The amount in controversy of the Plaintiff's individual claims meets or exceeds $25.00 in value. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

71.    Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

72.    Under the Act, damaged consumers have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

73.    Defendants provided Plaintiff and the Class with the following express warranty: that the sheeting and bedding products had a certain true and accurate thread count.

74.    These express warranties constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

75.    The sheets and bedding products' implied warranties are covered by 15 U.S.C. § 2301(7).

76.    The terms of written warranties and implied warranties became part of the basis of the bargain among Plaintiff (and all other Class Members) and Defendants when Plaintiff (and all other Class Members) were deciding to purchase the sheets or bedding products.

77.    Defendants breached these written and implied warranties as described in detail above.

78.    Without limitation, the sheets and bedding products had actual thread counts lower than the ones warranted and advertised.

79.    Plaintiff and each of the other Class members have had sufficient direct dealings with Macy's to establish privity of contract.  Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Creative Textiles, AQ Textiles, and Macy's,

and specifically, of Creative Textiles and AQ Textiles' warranties. Macy's was not intended to be the ultimate consumer of the sheets and bedding products and has no rights under the warranty agreements attaching to the products, which were for benefit of the consumers only.

80.    Affording Defendants a reasonable opportunity to cure their breaches of warranty would be unnecessary and futile here. At the time of sale of the sheets and bedding products, Defendants knew, should have known, or were reckless in not knowing of the misrepresentations concerning the products' thread count, but nonetheless failed to rectify the situation. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

81.    As a direct and proximate result of Defendants' breach of the written warranties and the implied warranty of merchantability, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

82.    Plaintiff, individually and on behalf of the Class, seeks all damages permitted by law, including full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

## Count Two

## Fraud

83.    Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

84.    Plaintiff brings this Count on behalf of herself and the Class.

85.    Defendants designed, manufactured, marketed, and/or sold sheets and bedding products with falsely inflated thread counts to Plaintiff and the Class.

Defendants represented to Plaintiff and the Class in advertising, packaging, product descriptions, and other forms of communication, including standard and uniform material, that the sheets and bedding products had higher thread counts than their true thread counts. Defendants were aware of or should have been aware of the falsity of these representations.

86.    Plaintiff and the Class reasonably relied upon Defendants' deception. They had no way of knowing that Defendants' representations were false and/or misleading. As consumers, Plaintiff and the Class did not and could not unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and the Class by concealing the true facts about the products' thread counts.

87.    Defendants' representations were material to consumers because the representations were directly relevant to the value and quality of the products.

88.    Plaintiff, individually and on behalf of the Class, seeks all damages permitted by law, including full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental and consequential damages, statutory attorney fees, and all other relief allowed by law

**Count Three**

**Consumer Legal Remedies Act**

**California Civil Code, § 1750, *et seq.***

89.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

90.    Plaintiff brings this Count on behalf of herself and the Class.

91.    Plaintiff brings this count pursuant to the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"), for omissions by Defendants, made actionable by affirmative misrepresentations and/or exclusive knowledge of material facts, and Defendants' active concealment of the truth.

92.    The bedding and linen products are "goods" pursuant to the CLRA at

18

1 | California Civil Code § 1761(a).

2 | 93. Defendants are "persons" pursuant to the CLRA at California Civil Code
3 | § 1761(c).

4 | 94. Plaintiff and the Class Members are "consumers" pursuant to the CLRA at
5 | California Civil Code § 1761(d).

6 | 95. Purchases of the bedding and linen products by Plaintiff and the Class
7 | Members are "transactions" pursuant to the CLRA at California Civil Code § 1761(e).

8 | *Affirmative Misrepresentations*

9 | 96. Thread count is a specific, quantifiable attribute of bedding and linen
10 | products.

11 | 97. There is no requirement to communicate the thread count of bedding and
12 | linen products when advertising or selling them to consumers. However, thread count
13 | is a significant driver of consumers' perceptions of the value of the products, as alleged
14 | throughout this Complaint.

15 | 98. Defendants sold to Plaintiff bedding and linen products that were
16 | advertised with inflated thread counts.

17 | 99. Defendants knew or should have known that the thread counts listed by
18 | themselves and/or their manufacturers or wholesalers were false or misleading.

19 | 100. Defendants, as detailed in this Complaint, repeated these false or
20 | misleading statements of thread count in various product listings and descriptions,
21 | either in the store, or advertisements, or the website, which were seen and relied upon
22 | by Plaintiff and Class Members.

23 | 101. These misstatements of the thread count of the bedding and linen products
24 | are prohibited by the CLRA, because they are "undertaken by [Defendants] in a
25 | transaction intended to result or which results in the sale or lease of [the bedding and
26 | linen products] to any consumer."

27 | 102. Defendants violated the CLRA by knowingly advertising that their
28 | bedding and linen products had a higher thread count than they actually had.

103. Defendants violated the CLRA's proscription against misrepresentation of the "approval, characteristics, ingredients, uses, benefits, or quantities" of the bedding and linen products by advertising a falsely inflated thread count. These misrepresentations violated California Civil Code § 1770(a)(5)'s proscription against representing that goods have characteristics that they do not have; Civil Code § 1770(a)(7)'s proscription against representing that goods are of a particular standard, quality or grade when they are of another; and Civil Code § 1770(a)(9)'s proscription against advertising goods with the intent not to sell the goods as advertised.

### *Exclusive Knowledge of Material Facts and Omissions of Material Facts*

104. Upon information and belief, through examination of their own products and interactions with manufacturers or wholesalers, and as otherwise detailed in this Complaint, Defendants have exclusive knowledge concerning the actual thread count of the bedding and linen products that they import and sell to consumers.

105. Defendants owe consumers a duty to disclose that the thread count information listed by Defendants, and/or the manufacturers or wholesalers of the bedding and linen products and advertised by Defendants is misleading and/or false.

106. Consumers, including Plaintiff, have no realistic means of determining the actual thread count of the bedding and linen products. A textile expert with magnifying equipment is needed to make such a determination. Further, the process of testing the thread count damages the sheets. Consumers therefore cannot be expected to discover the true thread count before making a purchase. This is true under any circumstances, but especially when ordering products over the internet or by catalog.

107. Retailers of bedding and linen products frequently fail to identify the manufacturer, importer, or seller of textiles at the point of sale or on product packaging. Import records similarly do not reveal the names of the original manufacturers of the materials used to construct the imported products. These omissions from packaging and import records make it difficult to trace products back to manufacturers.

108.   Defendants concealed from Plaintiff and Class Members that the thread counts advertised for the bedding and linen products are inflated to more than the actual thread count as a result of counting plies rather than threads, and that these thread counts are not calculated according to the method used by other bedding and linen providers and prescribed by ASTM D3775.

109.   Plaintiff and Class Members, as reasonable consumers, attached importance to representations by Defendants concerning the thread counts of the bedding and linen products in deciding whether to purchase the products, and in deciding whether the price was reasonable.   Thread counts are a material factor in consumers' determinations of the value and quality of bedding and linen products.

110.   Without disclosure of the above information, reasonable consumers such as Plaintiff were and continue to be deceived by Defendants' false thread counts.

111.   Defendants violated the CLRA by failing to disclose material facts and continuing to advertise thread counts Defendants knew to be inflated in, without limitation, product labels, advertisements, product descriptions, and website text.

112.   Defendants knew or should have known that their misrepresentations would cause Plaintiff and Class Members to pay higher prices for the bedding and linen products than they would have paid, had a misleading thread count not been advertised.

113.   In failing to disclose material facts contrary to their affirmative representations, Defendants violated California Civil Code § 1770(a)(5)'s proscription against representing that goods have characteristics that they do not have; Civil Code § 1770(a)(7)'s proscription against representing that goods are of a particular standard, quality, or grade when they are of another; and Civil Code § 1770(a)(9)'s proscription against advertising goods with the intent not to sell the goods as advertised.

114.   Pursuant to California Civil Code § 1782(d), Plaintiff seeks the following relief for Defendant's violations of CLRA §§ 1770(a)(5), (7), and (9) with regard to the bedding products identified herein:

a.   Actual damages under Civil Code § 1780(a)(1);

b.   Restitution under Civil Code § 1780(a)(3);

c.   Punitive damages under Civil Code § 1780(a)(4);

d.   Attorneys' fees and costs under Civil Code § 1780(d); and

e.   Any other relief the Court deems just and proper under the CLRA.

115.   While Plaintiff and the California State Class do not seek to recover damages under the CLRA in this complaint, after mailing appropriate notice and demand in accordance with Cal. Civ. Code § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

**Count Four**

**Unfair Competition Law – Unlawful Prong**

**California Business and Professions Code, § 17200, *et seq.***

116.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

117.   Plaintiff brings this Count on behalf of herself and the Class.

118.   The acts of Defendants described herein constitute unlawful business practices and violations of California's Unfair Competition Law, Business and Professions Code § 17200, *et seq.* (UCL).  Section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

119.   Defendants' business practices as alleged are unlawful under Federal Trade Commission Act (FTCA) § 5(a), 15 U.S.C. § 45(a), which outlaws "unfair or deceptive acts or practices in or affecting commerce."

120.   Defendants' business practices are unfair under FTCA § 5(a) because they are "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).

121.   Defendants' business practices are deceptive under FTCA § 5(a) because

1  they include affirmative representations and omissions and are likely to mislead
2  reasonable consumers under the circumstances.

3      122.  Defendants' business practices are further unlawful under the CLRA and
4  under UCL § 17000, *et seq.*, as alleged herein.

5      123.  Defendants' business practices are also unlawful pursuant to the FTCA by
6  way of the Textile Fiber Products Identification Act, 15 U.S.C. §§ 70a(a), 70a(b),
7  and/or § 70a(c).  These sections make it unlawful, under 15 U.S.C. §§ 41 *et seq.*, to
8  sell, transport, deliver, or advertise "any textile fiber product . . . which is misbranded
9  or deceptively advertised."

10      124.  As a result of Defendants' unlawful business practices, Plaintiff and Class
11  Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive
12  relief against the continuation of Defendants' practices, as well as the restitution of
13  payments made for Defendants' bedding and linen products, including other equitable
14  relief, costs, and attorneys' fees as recoverable by law.

15  **Count Five**
16  **Unfair Competition Law – Unfair Prong**
17  **California Business and Professions Code, § 17200, *et seq.***

18      125.  Plaintiff repeats and realleges all preceding paragraphs as if fully set forth
19  herein.

20      126.  Plaintiff brings this Count on behalf of herself and the Class.

21      127.  Defendants' acts constitute unfair competition under § 17200.  They are
22  contrary to public policy, violative of at least the FTCA, CLRA, and California False
23  Advertising Law, and injurious to the public and to competitors who advertise accurate
24  thread counts.

25      128.  Purchasers of Defendants' misleadingly advertised and labeled bedding
26  and linen products, including Plaintiff and Class Members, were injured because they
27  paid an excessive price for a product other than what they thought they were buying.

28      129.  Falsely advertising thread counts has no conceivable benefit to consumers

1  or to competition.  This behavior leads consumers to purchase products they do not

2  want, and it forces competitors to either follow suit in the deceptive conduct or suffer

3  lost sales.

4         130.   Consumers could not have reasonably avoided the injuries they suffered

5  because they lack the skill, knowledge, resources, equipment, and opportunity

6  necessary to discern the true nature of the bedding and linen products Defendants sold.

7         131.   As a result of Defendants' unfair business practices, Plaintiff and Class

8  Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive

9  relief against the continuation of Defendants' practices, as well as the restitution of

10 payments made for Defendants' bedding and linen products including other equitable

11 relief, costs, and attorneys' fees as recoverable by law.

12                                   **Count Six**

13                **Unfair Competition Law – Fraudulent Prong**

14             **California Business and Professions Code, § 17200, *et seq.***

15        132.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth

16 herein.

17        133.   Plaintiff brings this Count on behalf of herself and the Class.

18        134.   Defendants' acts constitute fraudulent business practices under UCL

19 § 17200.  They are contrary to public policy, violative of at least the FTCA, CLRA,

20 and California False Advertising Law (UCL § 17500), and injurious to the public and

21 to competitors who advertise accurate thread counts or no thread counts.

22        135.   Defendants represented the bedding and linen products as having a

23 specified thread count with the intention that customers would rely on those

24 representations in their purchases.

25        136.   Defendants knew or should have known that the threat counts they

26 represented were false.

27        137.   Defendants' thread count representations were material factors in the

28 purchases of the bedding and linen products by Plaintiff and the Class.

138.   Defendants' thread count representations were and continue to be relied upon by reasonable consumers, such as Plaintiff and the Class.

139.   Due to Defendants' fraudulent and deceptive representations concerning thread count, Plaintiff and the Class paid too much for the bedding and linen products.

140.   As a result of Defendants' fraudulent business practices, Plaintiff and Class Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the continuation of Defendants' practices, as well as the restitution of payments made for Defendants' bedding and linen products including other equitable relief, costs, and attorneys' fees as recoverable by law.

**Count Seven**

**Misleading and Deceptive Advertising**

**California Business and Professions Code, § 17500,** *et seq.*

141.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

142.   Plaintiff brings this Count on behalf of herself and the Class.

143.   Plaintiff asserts this cause of action against Defendants for misleading advertising in violation of California Business and Professions Code Section 17500.

144.   Defendants, at relevant times, have offered for sale bedding and linen products with deceptive advertisements and product specifications, as described herein. These deceptive advertisements and product specifications were made in the State of California and include product descriptions, advertisements, price listings, or other inducements in retail stores, or on the internet or in catalogs and other media.

145.   Defendants' representations fall within the ambit of § 17500 because the representations were intended to induce the public to purchase the bedding and linen products referenced in the representations, and Defendants knew or should have known that the representations were misleading.

146.   By disseminating representations that falsely represented the nature of the bedding and linen products to the general public, Defendants are likely to deceive the

1  public of the State of California and other States.

2      147.  As a result of Defendants' misleading and deceptive advertising, Plaintiff
3  and Class Members have been harmed and are entitled, pursuant to § 17535, to
4  injunctive relief against the continuation of Defendants' practices, as well as the
5  restitution of payments made for Defendants' bedding and linen products, or the
6  replacement of the products with goods of the type and quality described in the
7  misleading advertisements, including other equitable relief, costs, and attorneys' fees
8  as recoverable by law.

9                              **Count Eight**

10                    (**Breach of Express Warranty**)

11     148.  Plaintiff repeats and realleges all preceding paragraphs as if fully set forth
12  herein.

13     149.  Plaintiff brings this Count on behalf of herself and the Class.

14     150.  Defendants designed, developed, tested, manufactured, distributed,
15  marketed, and sold bedding and linen products for purposes of its eventual sale to end
16  users.

17     151.  Further, Defendants made the previously described express affirmations,
18  statements, assertions, and representations concerning the qualities of the bedding and
19  linen, in order to induce consumers, including Plaintiff and members of the Class, to
20  purchase its bedding and linen products. Such affirmations constitute express
21  warranties.

22     152.  Plaintiff and Class members relied on Defendants' representations
23  regarding the quality of their bedding and linen.

24     153.  Defendants' affirmations became the basis of the bargain for Plaintiff and
25  Class members purchasing bedding and linen products.

26     154.  Defendants' bedding and linen products failed to comport with the
27  affirmations, statements, assertions, and representations made by Defendants.

28

155.   Defendants provided a defective product and failed to properly inspect, test, and identify defects in its bedding and linen products.

156.   Defendants were aware of the defective nature of the bedding and linen products at the time that they were sold to Plaintiff and the Class.

157.   But for Defendants' conduct alleged herein and its breach of express warranty, Plaintiff and the Class would not have suffered the damages and losses alleged herein.

158.   As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

159.   Plaintiff and Class members have been damaged by Defendants' breach of their express warranty, having unknowingly purchased a product that does not have the qualities advertised by Defendant. Plaintiff and Class members are or will be forced to incur unanticipated expenses associated with replacing Defendants' products.

## Count Nine

## Breach of Warranty of Merchantability

160.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

161.   Plaintiff brings this Count on behalf of herself and the Class.

162.   Defendants designed, developed, tested, manufactured, distributed, marketed, and sold bedding and linen products for purposes of its eventual sale to end users.

163.   Defendants are merchants of bedding and linen products.

164.   Defendants impliedly warranted that Defendants' bedding and linen products passed without objection in the trade, and was fit for the ordinary purposes for which it is used.

165.   Defendants knew and/or should have known that bedding and linen products were defective and not of acceptable quality.

27

COMPLAINT

166.   Defendants knew and/or should have known that the bedding and linen products were not generally fit for the ordinary purposes for which they were intended to be used and did not pass without objection in the trade.

167.   Defendants' bedding and linen products were not merchantable at the time of sale, given that they did not have the qualities that they were represented to have, which prevented them from being able to serve its ordinary purpose and from passing without objection in the trade.

168.   Defendants knew and/or should have known that bedding and linen products would reach the end user without substantial change and in the condition in which they were sold.

169.   Defendants' bedding and linen products have failed to pass without objection in the trade and are not of comparable quality to other bedding and linen products in its line of trade.

170.   But for the Defendants' conduct alleged herein and their breach of the warranty of merchantability accompanying their bedding and linen products, the Plaintiff and the Class would not have suffered the damages Plaintiff and the Class members have sustained, as alleged herein.

171.   As a direct and proximate result of Defendants' breach of warranty of merchantability, the Plaintiff and the Class have sustained, are sustaining, and will sustain damages, as well as related damages as alleged herein.

## Count Ten

## Negligent Misrepresentation

172.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

173.   Plaintiff brings this Count on behalf of herself and the Class.

174.   Defendants owed the Plaintiff and the Class a duty of care to design, develop, test, manufacture, distribute, market, and sell a non-defective bedding and linen products.

175.   Defendants also owed Plaintiff and Class members a duty of care to warn them of the defects associated with their bedding and linen products.

176.   Defendants breached their duty of care by negligently selecting materials for designing, developing, testing, distributing, marketing, and selling the defective bedding and linen products.

177.   Defendants also breached their duty of care by negligently failing to warn consumers, contractors, carpenters, and retailers that the bedding and linen products were defective.

178.   Defendants were aware, or reasonably should have been aware, that their bedding and linen products were defective.

179.   When they purchased Defendants' bedding an linen products, Plaintiff and the Class members were unaware of those products' defective nature.

180.   The defective bedding and linen products resulted in damage to the Plaintiff in that the Plaintiff would not have purchased those products if they had known they were defective.

181.   As a direct and proximate result of Defendants' negligence, the Plaintiff and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

## **DEMAND FOR JURY TRIAL**

Plaintiff demand a trial by jury on all claims so triable as a matter of right pursuant to Federal Rule of Civil Procedure 38(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the putative Class Members pray that the Court enter judgment for them and against Defendants as follows:

a.     Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representatives of the Class, and designating Plaintiff's counsel as counsel for the Class;

b.     Declaring that Defendants' acts and practices, as described herein,

1    constitute deceptive acts and unconscionable business practices that
2    are unlawful under the CLRA, UCL, FAL, FTCA, and common
3    law.

4    c.    Awarding Plaintiff and the Class permanent injunctive relief
5          prohibiting, restraining, and enjoining defendants from engaging in
6          the conduct complained of herein, including, but not limited to,
7          manufacturing, marketing, advertising, selling, and distributing
8          bedding and linen products that have inflated thread counts;

9    d.    Directing Defendants to disgorge profits from its misleading and
10         deceptive practices and to pay restitution to the Class;

11   e.    Awarding Plaintiff and the Class actual, compensatory damages in
12         an amount to be proven;

13   f.    Awarding Plaintiff and the Class restitution of all monies paid to
14         Defendants as a result of unlawful, deceptive, and unfair business
15         practices;

16   g.    Awarding Plaintiff and the Class exemplary damages in an amount
17         to be proven;

18   h.    Ordering Defendants to issue corrective advertising;

19   i.    Awarding Plaintiff and the Class reasonable attorneys' fees, experts
20         witness fees, pre- and post-judgment interest, and other costs in
21         amounts to be determined by the Court; and

22   j.    Granting any other further legal or equitable relief as this Court
23         deems appropriate.

24

25

26

27

28

COMPLAINT

1  Date: June 27, 2017

2                                      By:    s/ S. Clinton Woods
3                                             S. Clinton Woods (SBN 246054)
                                              Michael McShane (SBN 127944)
4                                             AUDET & PARTNERS, LLP
5                                             711 Van Ness Avenue
                                              Suite 500
6                                             San Francisco, CA 94102
7                                             Telephone: (415) 568-2555
                                              Facsimile: (415) 568-2556
8                                             cwoods@audetlaw.com
9                                             mmcshane@audetlaw.com

10                                            Charles LaDuca
11                                            CUNEO GILBERT & LADUCA LLP
                                              4725 Wisconsin Avenue, NW
12                                            Suite 200
13                                            Washington, DC 20016
                                              Telephone: (202)789-3960
14                                            Facsimile: (202) 789-1813
15                                            charles@cuneolaw.com

16                                            Matthew Prewitt
17                                            CUNEO GILBERT & LADUCA LLP
                                              16 Court Street
18                                            Suite 1012
19                                            Brooklyn, NY 11241
                                              Telephone: (202)789-3960
20                                            Facsimile: (202) 789-1813
21                                            mprewitt@cuneolaw.com

22                                            Charles Schaffer
23                                            LEVIN SEDRAN & BERMAN
                                              510 Walnut Street
24                                            Suite 500
25                                            Philadelphia, PA 19106
                                              Telephone: (877) 882-1011
26                                            Facsimile: (215) 592-4663
27                                            cschaffer@lfsblaw.com

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Erica Mirabella
MIRABELLA LAW LLC
132 Boylston St. #5th
Boston, MA 02116
Telephone: (855) 505-5342
erica@mirabellallc.com

*Attorneys for Plaintiff*

COMPLAINT